UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>CHRISTIAN ORIBELLO EGUILOS,<br><br>                    Defendant. | No. 2:18-cv-399 WBS AC<br><br><br>MEMORANDUM & ORDER RE: MOTION TO DISMISS |

----oo0oo----

This court must once again dispel the commonly held misconception that all American citizens are afforded the same rights of citizenship. See United States v. Dang, No. 2:01-cv-1514 WBS DAD, 2004 WL 2731911, at *1 (E.D. Cal. Nov. 15, 2004). Through the denaturalization process, Congress has created two distinct classes of American citizens. The first class of citizens includes those whose mothers happened to be physically present in the United States, whether legally or illegally, at the moment they were born, and those whose parents were American citizens. See 8 U.S.C. § 1401 et seq. These citizens are

1

forever secure in their citizenship.  It can never be taken from them, no matter what they may have done in the past or what they may do in the future.

The second class of citizens, and the focus of this case, consists of those individuals who acquire their citizenship through naturalization.  See 8 U.S.C. § 1421 et seq.  To even qualify for naturalization, an individual must meet a long list of criteria.  They must wait at least five years after establishing permanent residency, pass a citizenship test, truthfully answer questions posed by United States Citizenship and Immigration Services ("USCIS"), be a person of good moral character, and swear allegiance to the Constitution.  These requirements, unique to those applying for naturalization, demonstrate only the beginning of the substantial burdens this country places on these second-class citizens.

Once a naturalized citizen completes this arduous process, their American citizenship still hangs in the balance, at the mercy of government officials.  The government can always initiate proceedings to revoke a naturalized individual's citizenship if it believes that the naturalization was illegally procured or procured by concealment of a material fact or by willful misrepresentation.  For instance, USCIS always asks a prospective citizen whether they have "**EVER** committed . . . a crime or offense for which [they] were **NOT** arrested."  Form N-400, Application for Naturalization 14 (2016), online at https://www.uscis.gov/n-400 (last visited April 12, 2019) (emphasis in original).  The scope of the question by itself is alarming and sets a trap for the unwary applicant.  Given the

thousands of possible offenses an individual can commit each day,
no applicant can answer this question truthfully without
jeopardizing their entire application and risking self-
incrimination.  See OFFENSE, Black's Law Dictionary (10th ed.
2014) (defining an offense as "[a] violation of the law; a crime,
often a minor one.").  Nevertheless, a false answer gives the
government nearly limitless leverage over the naturalized
individual's citizenship.  As the aforementioned question is
often repeated during an individual's citizenship interview, the
government can argue that such false testimony means that the
individual never possessed the requisite good moral character for
citizenship.  See 8 U.S.C. § 1101(f)(6).  Or the government can
simply claim that an untruthful answer caused the individual's
naturalization to be illegally procured by concealment or willful
misrepresentation.  See 8 U.S.C. § 1451(a).

And this boundless discretion means that these second-
class citizens can never feel entirely secure in their claim to
American citizenship.  As Chief Justice Roberts aptly observed,
nothing stops the government from instituting these proceedings
at any time, even some decades after a citizen is naturalized.
Tr. of Oral Argument at 27-28, Maslenjak v. United States, 137
S.Ct. 1918 (2017) (No. 16-309).  There is also no assurance that
the government will always institute these proceedings fairly, as
it may it may harbor any number of ulterior motives.  For
example, during the McCarthy Era, the government frequently
sought to denaturalize citizen-members of the Communist Party in
an attempt to suppress their political beliefs.  See, e.g.,
Chaunt v. United States, 364 U.S. 350, 351 (1960) (attempting to

denaturalize the defendant on the grounds that he did not have "the requisite attachment to the Constitution" because of his membership in the Communist Party); <u>Schneiderman v. United States</u>, 320 U.S. 118, 121 (1943) (alleging fraudulent procurement in naturalization where the defendant concealed "his Communist affiliation" from the naturalization court).  And once the government starts the denaturalization process, these civil proceedings are replete with procedural shortcomings given the important right at stake.  <u>See</u> Cassandra Robertson & Irina Manta, <u>(Un)Civil Denaturalization</u>, 94 N.Y.U. L. Rev. (forthcoming 2019) (manuscript at 49-54), https://bit.ly/2uMeBow (cataloguing the due process deficiencies of civil denaturalization).  Defendants often do not have the right to a court-appointed attorney nor the money to hire one.  It is within this unfortunate backdrop that this matter comes before the court as the defendant in this case, Christian Oribello Eguilos, is part of this second class of American citizens.

I.  <u>Factual and Procedural Background</u>

Defendant Christian Eguilos is a native of the Philippines.  (Compl. ¶ 12 (Docket No. 1).)  He became a permanent resident of this country on July 28, 2003.  (<u>Id.</u>)  In July 2013, defendant filed an application for naturalization with USCIS.  (Compl. Ex. D (Docket No. 1-1).)  As part of his application, which he signed under the penalty of perjury, defendant represented that he had not committed a crime or offense for which he had not been arrested.  (<u>Id.</u>)  Later, in October 2013, Isagani Acance, an immigration officer with USCIS, interviewed defendant concerning his eligibility for

4

naturalization. (Compl. ¶ 18.) During the interview and under oath, defendant again responded that he had not committed a crime or offense for which he had not been arrested. (Id. ¶¶ 20-21.) USCIS subsequently approved defendant's naturalization application. (Id. ¶ 26.) Defendant then signed the provided notice of a naturalization oath ceremony and indicated that he had not committed any crime or offense since his interview. (Id. ¶ 29; Compl. Ex. E.) On November 6, 2013, defendant took the oath of allegiance to become a citizen, and USCIS issued him a certificate of naturalization that same day. (Compl. ¶ 32; Compl. Ex. F.)

Fourteen months later, on January 2, 2015, the State of California filed a felony complaint charging defendant with fourteen counts of criminal offenses relating to the sexual abuse of minors. (Compl. Ex. C.) Later that year, pursuant to a plea agreement, defendant pled nolo contendere before the Los Angeles County Superior Court to four counts of forcible lewd acts upon a child in violation of California Penal Code § 288(b)(1).[1] (Id.; Compl. Ex. B.) The four counts covered conduct between January 2011 and December 2014. The Superior Court accepted defendant's plea, found him guilty on those four counts, sentenced him to forty years in prison, and ordered him to register as a sex offender for the rest of his life. (Compl. ¶ 11; Compl. Ex. B.)

On February 22, 2018, the United States brought this action to revoke and set aside defendant's citizenship and cancel

---

[1] All references Cal. Penal Code § 288 refer to the then-applicable version of the statute at the time of defendant's conviction, unless noted otherwise. This version of the statute was effective from September 9, 2010 to January 1, 2019.

his certificate of naturalization under the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1451(a). The court appointed the Office of the Federal Defender as counsel of record for defendant. (Docket No. 19.) Defendant now moves to dismiss the complaint against him in full. (Docket No. 20.)

II. Discussion

A. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" will not survive a motion to dismiss. Id. (internal quotation marks and citations omitted).

B. Denaturalization Under 8 U.S.C. § 1451

The denaturalization statute, 8 U.S.C. § 1451, directs courts to revoke a citizen's naturalization if naturalization was "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation." Id. § 1451(a). The government bears the burden of proof in denaturalization proceedings. See Fedorenko v. United States, 449 U.S. 490, 505 (1981). And the evidence justifying revocation of citizenship

6

must "be clear, unequivocal, and convincing and not leave the issue in doubt." Id. at 517 (citations omitted). "[O]nce a district court determines that the Government has met its burden of proving that a naturalized citizen obtained his citizenship illegally or by willful misrepresentation, it has no discretion to excuse the conduct." Id. (emphasis added).

"No alien has the slightest right to naturalization unless all statutory requirements are complied with." United States v. Ginsberg, 243 U.S. 472, 475 (1917). "Failure to comply with any [congressionally imposed] conditions renders the certificate of citizenship illegally procured, and naturalization that is unlawfully procured can be set aside." Fedorenko, 449 U.S. at 506. Section 316(a) of the INA, 8 U.S.C. § 1427(a), provides that no person shall be naturalized unless that person has demonstrated "good moral character" for at least five years prior to the time of his application for citizenship. Section 101(f) of the INA, 8 U.S.C. § 1101(f), enumerates several specific classes of persons who are precluded from establishing "good moral character" for purposes of naturalization because of conduct ranging from the merely unsavory to the outright criminal. See 8 U.S.C. § 1101(f)(1)-(8). The statute also contains a catch-all provision stating that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." See id.

Here, the government seeks to denaturalize defendant on four separate grounds: (1) defendant lacked the good moral character required during the statutory period under 8 U.S.C. §

1101(f)(3) for the reason that he committed crimes involving moral turpitude ("CIMT") during that period (Count One); (2) defendant's criminal sexual conduct with a minor was an unlawful act that precluded him from establishing good moral character under the catch-all provision of Section 101(f) and 8 C.F.R. § 316.10(b)(3)(iii) (Count Two); (3) defendant provided false testimony during his naturalization interview when he represented that he never committed a crime or offense for which he had not been arrested and therefore lacked good moral character under 8 U.S.C. § 1101(f)(6) (Count Three); and (4) defendant procured his naturalization by willfully misrepresenting and concealing his sexual abuse of a child in violation of 8 U.S.C. § 1451(a) (Count Four).

### 1.   Count One: Crime Involving Moral Turpitude

#### (a)   Elements of Section 101(f)(3) of the INA

In order establish that a person lacks good moral character under Section 101(f)(3) of the INA, the government must be able to allege and prove that such person either (i) was convicted of a CIMT, or (ii) admits to having committed a CIMT, during the statutory period.  8 U.S.C. § 1101(f)(3) (incorporating 8 U.S.C. § 1182(a)(2)(A)); see also United States v. Estrada, 349 F. Supp. 3d 830, 835 (D. Ariz. 2018) (same).

First, under Federal Rule of Evidence 410 and relevant case law, the government cannot rely on defendant's state court conviction to prove this count because the conviction resulted from a plea of nolo contendere.  See United States v. Nguyen, 465 F.3d 1128, 1131-33 (9th Cir. 2006).  Second, the government conceded at the hearing on this motion that defendant has not

admitted to committing the acts constituting a violation of Cal. Penal Code § 288(b)(1). The government's argument that it should be allowed to prove that defendant admits to the crime by getting him to admit to it in subsequent discovery in this case is unavailing. In order to survive a motion to dismiss under Rule 12(b)(6) the government must be able to allege that all the facts necessary to establish its claim exist. It cannot rely upon facts that do not exist at the time the complaint is filed.

Thus, because the government cannot rely upon defendant's conviction based upon his plea of nolo contendere, and acknowledges that it cannot allege that defendant admits to having committed a CIMT, Count One of the Complaint, based upon Section 101(f)(3) of the INA, must be dismissed for that reason.

(b)  Moral Turpitude

As a separate and alternative ground for dismissal of Count One, as counterintuitive as it may seem to the layperson, the court must conclude that a violation of Cal. Penal Code § 288(b)(1) does not constitute a CIMT under the applicable law. To determine whether a crime qualifies as a CIMT, courts first apply the categorical approach set forth in Taylor v. United States, 495 U.S. 575 (1990).[2] See Ceron v. Holder, 747 F.3d 773, 778 (9th Cir. 2014) (en banc). First, the court must identify the elements of the state statute of conviction--here, Cal. Penal Code § 288(b)(1). See id. Second, the court compares those elements to the generic definition of a crime of moral turpitude

---

[2] The court performs this analysis on a motion to dismiss because application of the categorical approach is "purely a question of law." See United States v. Martinez-Hernandez, 912 F.3d 1207, 1213 (9th Cir. 2019) (citation omitted).

and decides whether the statute meets that definition.  Id.

To show that a state statute is broader than the generic federal crime, the defendant "must show that there is a 'realistic probability' that the statute would be applied to acts not covered by the generic federal statute." Linares-Gonzalez v. Lynch, 823 F.3d 508, 514 (9th Cir. 2016) (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).  To do so and demonstrate that there is not a categorical match, the defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." Duenas-Alvarez, 549 U.S. at 193.

"[T]he federal generic definition of a CIMT is a crime involving fraud or conduct that (1) is vile, base, or depraved and (2) violates accepted moral standards." Saavedra-Figueroa v. Holder, 625 F.3d 621, 626 (9th Cir. 2010); see also Robles-Urrea v. Holder, 678 F.3d 702, 708 (9th Cir. 2012) (CIMTs are "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.") (citations omitted).  Non-fraudulent CIMTs "almost always involve an intent to injure someone, an actual injury, or a protected class of victims." Turijan v. Holder, 744 F.3d 617, 621 (9th Cir. 2014).  To qualify, such acts must be accompanied by a "vicious motive or a corrupt mind" because "evil or malicious intent is . . . the essence of moral turpitude." Latter-Singh v. Holder, 668 F.3d 1156, 1161 (9th Cir. 2012) (citations omitted).

The government alleges that defendant committed a CIMT

by violating Cal. Penal Code § 288(b)(1).  (Compl. ¶ 49.)

Section 288(a), referenced in (b)(1), provides:

> [A]ny person who willfully and lewdly commits any lewd
> or lascivious act . . . upon or with the body, or any
> part or member thereof, of a child who is under the
> age of 14 years, with the intent of arousing,
> appealing to, or gratifying the lust, passions, or
> sexual desires of that person or the child, is guilty
> of a felony.

Section 288(b)(1) provides:

> Any person who commits an act described in subdivision
> (a) by use of force, violence, duress, menace, or fear
> of immediate and unlawful bodily injury on the victim
> or another person, is guilty of a felony and shall be
> punished by imprisonment in the state prison for 5, 8,
> or 10 years.

Reading these two provisions together, a crime under
Section 288(b)(1) contains the following elements: (1) willfully
and lewdly; (2) committing any lewd or lascivious act; (3) on a
child who is under the age of 14 years; (4) with the intent of
arousing, appealing to, or gratifying the lust, passions or
sexual desires of the defendant or child; and (5) by use of
force, violence, duress, menace, or fear of immediate and
unlawful bodily injury on the victim or another person.  See Cal.
Penal Code § 288(b)(1); Brown v. Superior Court, 187 Cal. App.
4th 1511, 1531 (2d Dist. 2010) (identifying similar elements);
see also United States v. Castro, 607 F.3d 566, 568 (9th Cir.
2010) (identifying similar elements for a related provision,
Section 288(c)(1)).  Whether Cal. Penal Code § 288(b)(1)
constitutes a CIMT under 8 U.S.C. § 1182(a)(2)(A) is a matter of
first impression.

Before proceeding to the second step of the categorical
approach, the court observes that the Ninth Circuit has applied

11

the categorical approach to a very similar offense. In Menendez
v. Whitaker, 908 F.3d 467 (9th Cir. 2018), the Ninth Circuit
determined whether a related provision that criminalizes lewd or
lascivious conduct upon a fourteen or fifteen year old child,
Cal. Penal Code § 288(c)(1),[3] is categorically a CIMT. Like
Section 288(b)(1), Section 288(c)(1) references and borrows
elements from Section 288(a). When analyzing the elements from
Section 288(a), the Ninth Circuit observed that both the actus
reus requirement and the mens rea requirement have been
expansively construed by California courts. See id. at 472. For
instance, "[t]he 'lewd or lascivious' element of the crime
focuses on the defendant's sexual intent," so any touching, "even
if the touching is outwardly innocuous and inoffensive," violates
Section 288. Id. (quoting People v. Lopez, 19 Cal. 4th 282, 289
(1998)). In fact, even constructive touching alone, that is
touching in which the defendant induces the victim to touch
themselves or another, violates this section. See id. (citing
People v. Villagran, 5 Cal. App. 5th 880, 890 (1st Dist. 2016);
People v. Lopez, 185 Cal. App. 4th 1220, 1229 (4th Dist. 2010)
("[A] defendant need not touch the victim in order to violate

---

[3]    Section 288(c)(1) provides that:

Any person who commits an act described in subdivision
(a) with the intent described in that subdivision, and
the victim is a child of 14 or 15 years, and that
person is at least 10 years older than the child, is
guilty of a public offense and shall be punished by
imprisonment in the state prison for one, two, or
three years, or by imprisonment in a county jail for
not more than one year. In determining whether the
person is at least 10 years older than the child, the
difference in age shall be measured from the birth
date of the person to the birth date of the child.

section 288.")).  With respect to the mens rea requirement, the
intent of arousing, appealing to, or gratifying the lust,
passions or sexual desires of the defendant or child, the panel
noted that "the statute does not require that the defendant know
that the minor is underage" and "a good faith and reasonable
mistake of age . . . is not a defense to a charge."  Id. (citing
People v. Olsen, 36 Cal. 3d 638, 647 (1984)).

          After making these observations, the Ninth Circuit
considered whether Section 288(c)(1) is broader than the federal
generic definition of a CIMT.  First, the panel concluded that
the statute "lacks the corrupt scienter requirement that is the
touchstone of moral turpitude" because the statute requires only
sexual intent without a defense for good-faith reasonable mistake
of age.  See id. at 473 (citations and internal quotation marks
omitted).  Second, the panel held that Section 288(c)(1) does not
require any "intent to injure" or "actual injury" because any
touching, even consensual touching, can violate this subdivision.
Id.  Third, and finally, the panel applied past Ninth Circuit
precedent and found that Section 288(c)(1) did not qualify as a
CIMT, even though it dealt with a protected class of victims.
See id. 473-74.  The panel found that Section 288(c)(1) was not
like other sex-related crimes involving moral turpitude.  See id.
Given these conclusions, the Ninth Circuit held that Section
288(c)(1) is not categorically a CIMT.  Id. at 474.

          Because Section 288(b)(1) also borrows many of its
elements from Section 288(a), the Menendez court's observations
about its actus reus and mens rea requirements apply with equal
force here.  There are, however, two relevant differences between

13

Section 288(b)(1) and Section 288(c)(1). First, Section 288(b)(1) slightly modifies the actus reus requirement because it adds the element that the defendant commits the proscribed act "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." Second, Section 288(b)(1) covers minor-victims under the age of 14 years while Section 288(c)(1) covers only 14 or 15 year old minor-victims. Following the lead of the Ninth Circuit in Menendez, this court will proceed to the second step of the categorical approach as applied to Section 288(b)(1).

Nothing within Section 288(b)(1) requires a defendant to have an "evil or malicious intent." Like Section 288(c)(1), this subsection requires only sexual intent and does not recognize a defense for good-faith reasonable mistake of age. See Menendez, 908 F.3d at 473; see also People v. Soto, 51 Cal. 4th 229, 248 n.11 (2011) ("[W]e refused to extend Hernandez's mistake-of-age defense to section 288."). The California Supreme Court has also made it clear that the consent of the victim is not a defense to this crime. See Soto, 51 Cal. 4th at 248 ("Honoring the clear legislative intent expressed in the plain language of section 288(b)(1), we hold that consent of the victim is not a defense to the crime of aggravated lewd conduct on a child under age 14."). Because Section 288(b)(1) thus lacks the appropriate showing of scienter, it lacks the requisite element of willfulness or evil intent as is required for a CIMT. See Quintero-Salazar v. Keisler, 506 F.3d 688, 694 (9th Cir. 2007).

Even with the modifications to the actus reus requirement, a defendant convicted under Section 288(b)(1) need

not actually injure or intend to injure another person. For instance, the force identified in this subsection includes any physical force "substantially different from or substantially in excess of that required for the lewd act."[4] People v. Senior, 3 Cal. App. 4th 765, 774 (6th Dist. 1992). This level of force may simply amount to the defendant manipulating the victim's hand as a tool to rub his own genitals. See People v. Babcock, 14 Cal. App. 4th 383, 386 (1st Dist. 1993). It also includes slightly pulling the victim's head forward before forcing the victim to perform an act of oral copulation. See People v. Mendibles, 199 Cal. App. 3d 1277, 1307 (2d Dist. 1988), disapproved of on other grounds by Soto, 51 Cal. 4th 229. Where even minor contact with the victim supports conviction and nothing within the elements of the conviction requires any proof of actual harm or an intent to injure, Section 288(b)(1) does not categorically match these aspects of the federal generic definition of a CIMT. See Castrijon-Garcia v. Holder, 704 F.3d 1205, 1214 (9th Cir. 2013) (concluding that simple kidnapping, California Penal Code § 207(a), does not categorically match the generic definition of a CIMT because it does not require the intent to cause injury or actual injury within its elements).

The court does note that Section 288(b)(1) involves a protected class of victims: minors under the age of 14. See Nunez v. Holder, 594 F.3d 1124, 1131 n.4 (9th Cir. 2010) (defining children as a protected class of victims). But, as the

---

[4] This definition of force also applies to the version of Section 288 that was in effect at the time of defendant's conviction. See Soto, 51 Cal. 4th at 236.

Ninth Circuit made clear in Menendez, "not all criminal statutes intended to protect minors establish crimes involving moral turpitude."  908 F.3d at 473; see also Hernandez-Cruz v. Attorney Gen. of U.S., 764 F.3d 281, 286 (3d Cir. 2014) (holding that a conviction under Pennsylvania's child endangerment statute does not constitute a CIMT).  In reaching this conclusion with respect to Section 288(c)(1), the Menendez panel relied on the Ninth Circuit's decision in Nicanor-Romero v. Mukasey, 523 F.3d 992 (9th Cir. 2008), overruled on other grounds by Marmolejo-Campos v. Holder, 558 F.3d 903 (9th Cir. 2009).  In Nicanor-Romero, the Ninth Circuit held that a misdemeanor conviction under the California statute prohibiting annoying or molesting any child under the age of 18 did not constitute a CIMT since the actus reus component is satisfied "by relatively minor conduct," 523 F.3d at 1000, and "a good faith but 'unreasonable' mistaken belief that the victim is eighteen or older still satisfies the [statute's] mens rea requirement," id. at 1001.

Like Section 288(c)(1), Section 288(b)(1) is similar to the statute at issue in Nicanor-Romero.  Relatively minor conduct satisfies the actus reus element for a conviction under Section 288(b)(1).  "'[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves' are sufficient to support a finding that the lewd act was committed by means of force."  People v. Garcia, 247 Cal. App. 4th 1013, 1024 (6th Dist. 2016) (quoting People v. Alvarez, 178 Cal. App. 4th 999, 1005 (4th Dist. 2009)).  Likewise, as explained previously, the statute does not recognize a mistake-of-age defense and requires only sexual intent.  See also Castrijon-

Garcia, 704 F.3d at 1214 (acknowledging the importance of a culpable mental state in determining whether a crime is a CIMT). Because Section 288(b)(1) shares these similarities with the statute at issue in Nicanor-Romero, its elements "create[] a 'reasonable probability' of a conviction based on conduct that did not involve moral turpitude." See Menendez, 908 F.3d at 473 (citing Nicanor-Romero, 523 F.3d at 1007).[5]

Since there is no categorical match between Section 288(b)(1) and the generic federal offense, the court must next determine whether Section 288(b)(1) is divisible and, if so, apply the modified categorical approach. See Almanza-Arenas v. Lynch, 815 F.3d 469, 476 (9th Cir. 2016) (en banc). "[A] statute is divisible only when it 'list[s] elements in the alternative, and thereby define[s] multiple crimes.'" United States v. Martinez-Lopez, 864 F.3d 1034, 1039 (9th Cir. 2017) (en banc) (quoting Mathis v. United States, 136 S.Ct. 2243, 2249 (2016)). In making this determination, the court must "consult 'authoritative sources of state law' to determine whether a statute contains alternative elements defining multiple crimes or alternative means by which a defendant might commit the same crime." Id. (citing Mathis, 136 S.Ct. at 2256). If those sources do not provide a definitive answer, the court may look at record material or persuasive authority on California law. See id.

_____

[5] Like Section 288(c)(1), Section 288(b)(1) is not similar to other sex-related CIMTs. See id. at 473-74 (observing that previous sex-related crimes deemed categorically to involve moral turpitude include incest, knowing possession of child pornography, and communication with a minor for immoral purposes).

Based on this analysis, the court finds that Section 288(b)(1) is not divisible. Even though Section 288(b)(1) states that the crime must be committed "by force, violence, duress, menace, or fear of immediate and unlawful bodily injury," the court cannot assume that the statute lists alternative elements and defines multiple crimes simply because it contains a disjunctive list. Id. (citing Mathis, 136 S.Ct. at 2249). Instead, relevant state decisional law treats these various alternatives as different means of satisfying the same element.[6] See Brown, 187 Cal. App. 4th at 1531 (listing "by force, violence, menace, or fear of immediate and unlawful bodily injury" as part of the same element). Nothing within the statute or the California form jury instructions requires a jury to agree on a specific method enumerated within this subdivision. See Judicial Council of California Jury Instructions (CALCRIM) 1111; Martinez-Lopez, 864 F.3d at 1041 (finding the California Criminal Jury Instructions to be persuasive authority on California law); see also Soto, 51 Cal. 4th at 236 ("The prosecutor explained, with regard to the statutory factors of force, violence, duress, menace, and fear: 'You don't have to find all of them, just one of them is enough. It's also enough if some jurors find force

_____

[6] The government claims that the California Supreme Court has spoken on this issue and classified "duress" as a distinct element of Section 288(b)(1). See People v. Leal, 33 Cal. 4th 999, 1004 (2004). While Leal refers to duress as an element of Section 288(b)(1), the Court did so in passing and did not claim to define each disjunct in Section 288(b)(1) as individual elements distinct from each other. Instead, Leal distinguished duress as used in Section 288(b)(1) from the defense of duress. Id. at 1009. Therefore, nothing in Leal requires this court to find this statute divisible.

and some jurors find duress, but you all must unanimously agree that it was accomplished [by one or the other].'"). Because "[the] jury could return a conviction without agreeing on which particular statutory alternative applied, [] the statute is indivisible." United States v. Robinson, 869 F.3d 933, 938 (9th Cir. 2017) (emphasis in original) (citing Mathis, 136 S.Ct. at 2248-50). Therefore, the court cannot apply the modified categorical approach.

Accordingly, as heinous as the crime is, under the law as established by the Ninth Circuit, which is binding upon this court, the court must conclude that Cal. Penal Code 288(b)(1) does not categorically constitute a CIMT.

### 2. Count Two: Other Unlawful Acts

Pursuant to its authority under the catch-all provision of Section 101(f), the government promulgated 8 C.F.R. § 316.10. See United States v. Teng Jiao Zhou, 815 F.3d 639, 643 (9th Cir. 2016). This regulation, which offers guidance on making moral character determinations, states that an individual lacks the requisite good moral character "if during the statutory period, the applicant: . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts." 8 C.F.R. § 316.10(b)(3)(iii). The Ninth Circuit has stated that a naturalized citizen may be denaturalized under this regulation for pre-naturalization conduct that was not discovered or proven until after naturalization. Teng Jiao Zhou, 815 F.3d at 643.

Defendant's only argument against this count is that it should be dismissed because the main evidentiary basis is

defendant's inadmissible nolo contendere plea and accompanying conviction.  However, on a motion to dismiss, the court can consider all relevant factual allegations, even those which might be based on inadmissible evidence.  No case law has "altered the rule that a plaintiff need not plead specific, admissible evidence in support of a claim, and a contrary rule would confuse the principles applicable to a motion to dismiss with those governing a motion for summary judgment."  Campanella v. Cty. of Monroe, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) (citations omitted).

Moreover, for the purposes of this regulation, an applicant need not be convicted of the alleged offense to lack good moral character.  See United States v. Dang, 488 F.3d 1135, 1141 (9th Cir. 2007) ("[R]equiring consideration of an applicant's unlawful acts during the five-year moral character period--whether or not the applicant is convicted for the acts during that period--is not beyond the agency's statutory mandate.").  It is sufficient that the alleged offense was committed during the statutory period specified in 8 U.S.C. § 1427(a).  See United States v. Suarez, 664 F.3d 655, 661 (7th Cir. 2011) ("[A] conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character.  It is enough that the offense was 'committed' during that time.").

It is sufficiently alleged that the offense took place in the five years immediately preceding the date of filing his application.  See 8 U.S.C. § 1427(a) (stating that "the five years immediately preceding the date of filing [the] application"

is a good moral character period).  Defendant applied for naturalization in 2013 and allegedly committed the offending conduct starting in 2011.

Accordingly, the inadmissibility of the plea and resulting conviction is not an appropriate basis for the court to dismiss Count Two.

### 3.    Count Three: False Testimony

Under Section 101(f)(6) of the INA, a person lacks good moral character if he "has given false testimony for the purpose of obtaining any benefits under this chapter."  8 U.S.C. § 1101(f)(6).  Testimony is limited to oral statements made under oath, and the witness must have had the subjective intent to deceive in order to receive immigration benefits.  Ramos v. I.N.S., 246 F.3d 1264, 1266 (9th Cir. 2001) (citing Kungys v. United States, 485 U.S. 759, 780 (1988)).  There is no requirement that the false testimony concern material facts.  See Kungys, 485 U.S. at 779-82.

Defendant first argues that Count Three should be dismissed because the government has failed to establish a factual basis for the requisite subjective intent.  The government's complaint describes the circumstances surrounding defendant's naturalization interview.  During his conversation with the USCIS officer, defendant represented that he had not committed a crime or offense for which he had not been arrested, and he never disclosed his sexual abuse of a minor.  (Compl. ¶ 20-25.)  While the complaint merely asserts that defendant provided this allegedly false testimony to obtain an immigration benefit, a factfinder may infer such a subjective intent "where a

true answer might have jeopardized a naturalization application."
See Usude v. Luna, No. CV 15-00301-AB (SSX), 2018 WL 522250, at
*6 (C.D. Cal. Jan. 23, 2018) (collecting cases).  Here, accepting
all allegations as true, a true answer could have jeopardized
defendant's naturalization application.  Defendant's
naturalization interview occurred almost immediately prior to
USCIS' approval of his application.  Admitting that he had
sexually abused a child at such a late point in the process may
have precluded a finding of good moral character and thus
jeopardized his entire application.  See 8 U.S.C. § 1101(f); 8
C.F.R. § 316.10(b)(3)(iii).

Accordingly, although there may have been other reasons
for defendant's failure to disclose his prior conduct, at least
on the basis of the record before the court on this motion, a
factfinder could conclude that defendant provided false testimony
in order to prevent further inquiry into an alleged offense that
no immigration official was aware of at the time and that
defendant therefore possessed the requisite subjective intent.

Defendant also urges the court to dismiss Count Three
because it too relies on the inadmissible nolo contendere plea
and resulting conviction.  For the reasons discussed above, this
argument fails at this stage of the proceedings.  Count Three
also does not depend on proof of defendant's conviction.
Instead, it simply requires proof that defendant lied during his
naturalization interview about the conduct underlying his Cal.
Penal Code § 288(b)(1) conviction.  The government stated that it
is prepared to prove the existence of the underlying conduct via
direct evidence.

4.   Count Four: Misrepresentation or Concealment

As noted above, 8 U.S.C. § 1451(a) provides for the denaturalization of citizens whose citizenship orders and certificates of naturalization "were procured by concealment of a material fact or by willful misrepresentation."  This provision "contains four independent requirements: [1] the naturalized citizen must have misrepresented or concealed some fact, [2] the misrepresentation or concealment must have been willful, [3] the fact must have been material, and [4] the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment."  Kungys, 485 U.S. at 767.

A misrepresentation or concealment of a material fact is done willfully if it was done deliberately and voluntarily. See Espinoza-Espinoza v. Immigration & Naturalization Serv., 554 F.2d 921, 925 (9th Cir. 1977).  "[T]he test of whether concealments or misrepresentations were material is whether they had a natural tendency to influence the decisions of [INS]." Kungys, 485 U.S. at 772.  Proof of a material misrepresentation creates a rebuttable presumption of ineligibility for citizenship that arises whenever "the Government produces evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed."  Id. at 783 (Brennan, J., concurring); see United States v. Puerta, 982 F.2d 1297, 1304 (9th Cir. 1992) (concluding that Justice Brennan's concurrence controls as the narrowest grounds).  Under this framework, the government satisfies Section 1451(a)'s "procured by" requirement "if it produces evidence making it fair to infer the existence of some disqualifying fact."  See United States v. Nguyen, 829 F.3d 907,

916 (8th Cir. 2016) (citing <u>Kungys</u>, 485 U.S. at 776-77).  A

naturalized individual may rebut this presumption "by showing,

through a preponderance of the evidence, that the statutory

requirement as to which the misrepresentation had a natural

tendency to produce a favorable decision was in fact met."

<u>Kungys</u>, 485 U.S. at 777.

            For the purposes of a motion to dismiss, the

government's complaint satisfies these four independent

requirements.  First, the government alleges that defendant

misrepresented and concealed his sexual abuse of a child.

(Compl. ¶ 76.)  Second, the government avers that that defendant

did so voluntarily and deliberately when he stated that he had

not committed any crime for which he had not been arrested,

despite knowing that such a representation was false.  (Compl. ¶

76.)  Third, Exhibit A to the government's complaint, the

affidavit of good cause submitted by Immigration and Customs

Enforcement Special Agent Ky Bach, states that the criminal

conduct was material because it would have had the natural

tendency to influence USCIS in its decision whether to approve

defendant's application.  (Compl. Ex. A at 9.)  Fourth, and

finally, that same affidavit also asserts that concealing and

misrepresenting the underlying criminal conduct affected the

final naturalization decision as USCIS would not have approved

defendant's application otherwise.  (<u>Id.</u>)

            Accordingly, the motion to dismiss Count Four must be

denied.  While the government's allegations are sufficient to

survive a motion to dismiss, defendant will not be precluded from

presenting evidence on summary judgment or at trial, particularly

on the issue of willfulness.  Whether the broad scope of the questions asked to defendant during the naturalization process would have reasonably called for a confession to the crimes of which defendant was subsequently convicted, and motivation for his failure to reveal such conduct are certainly proper subjects for later inquiry.[7]

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss (Docket No. 20) be, and the same hereby is, GRANTED IN PART.  Count One of the government's complaint is DISMISSED.  The motion is DENIED in all other respects.

Dated:  April 16, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[7]    Defendant also urges the court to dismiss this count because it too relies on the inadmissible nolo contendere plea and resulting conviction.  For the reasons given above, this argument fails.  Count Four does not depend on proof of defendant's conviction.  Instead, like Count Three, it simply requires proof that defendant misrepresented or concealed the underlying conduct of the Cal. Penal Code § 288(b)(1) conviction.  The government maintains that it is prepared to prove the underlying conduct with direct evidence.